IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| EL-RAY KING,<br>*Plaintiff,*<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY<br>OF AMERICA,<br>*Defendant.* | § § § § § § § § § § § § § | 2:10-CV-0273 |

## MEMORANDUM OPINION AND ORDER

Plaintiff El-Ray King seeks benefits and certain ERISA penalties as a beneficiary of a long term disability plan which he alleges was administered by Defendant Unum Life. Unum Life alleges, *inter alia*, that the claims are barred by limitations. King argues that because he participated in a Regulatory Settlement Agreement to reassess his claims that his claims are not time-barred. The matter is before the Court on Defendant's *Motion for Summary Judgment*.

## FACTS

King was covered under a long-term disability plan that was sponsored and maintained by Weyerhaeuser Company. Unum Life issued the Plan to Weyerhaeuser.

On January 25, 1999, Unum Life received a claim for benefits from King, who worked as a Feeder Operator at Weyerhaeuser. King's last day to work at Weyerhaeuser was September 25, 1998.

In a letter dated March 18, 1999, Unum Life informed King that his request for benefits had been initially approved, less the 180-day elimination period in the Plan. King began receiving benefits on or about March 25, 1999.

On September 20, 1999, Unum Life received supplemental claim forms from King. In a letter dated March 1, 2000, Unum Life requested updated certification from King of his continuing disability.

On or about April 27, 2000, Unum Life advised King that he was not entitled to benefits beyond that date. At that time, Unum Life also advised King that he had ninety days to request an administrative review.

King made a timely request for administrative review, and after being informed that Unum Life could not locate that request, faxed a copy of the request to Unum Life on September 19, 2000. On December 20, 2000, Unum Life advised King that the deadline for requesting an administrative review was July 29, 2000 and that there was no record of having received a request (or his letter) by that date. Unum Life further advised King that it would not conduct an administrative review due to the un-timeliness of his request.

In a letter dated April 16, 2001, an attorney purportedly working for King[1] requested the additional benefit payments on King's behalf and indicated the possibility of filing a lawsuit. Unum Life responded to the attorney's letter on May 15, 2001.

---

[1] King asserts that he "never actually hired Ronald Spriggs" but offers no other explanation. Pl.'s Br. at 8.

In 2004, Unum Life entered into a Regulatory Settlement Agreement (RSA) between itself, the Department of Labor, and various state agencies. Through this RSA, a reassessment process was established to review previously-denied claims.

On March 11, 2005, King requested to participate in this optional Claim Reassessment Process. King submitted a Reassessment Information Form in January 2006. King also signed a Conditional Waiver and Release in order to participate in the reassessment. The Waiver provided, in part:

> To the extent that following the reassessment there remains a complete or partial denial of benefits, my right to initiate or continue litigation regarding that portion of the prior denial that has not been reversed or changed is not waived. In addition, any applicable statute of limitations is tolled during the pendency of the reassessment of my claim; however, I understand that my participation in the Claim Reassessment Process will not revive or reinitiate the statute of limitations with respect to the previous claim decision.

After a period of investigation, the Consultant informed King on October 25, 2006 that Unum Life's original decision to discontinue benefits had been reversed in part. King would receive payments for the period of April 28, 2000 through January 31, 2001. The Consultant informed King that the additional benefit would be $5,425.29 after subtracting unemployment benefits King had received in the amount of $7,512.00. He also informed King that he would receive an additional $2,281.04 in interest.

Over three years later, on December 15, 2009, King requested a copy of his claim file from Unum Life. In a letter dated January 7, 2010, Unum Life provided King with a copy of his file, a copy of the Plan, and the current claims manual.

On March 5, 2010, King requested an administrative review of Unum Life's reassessment decision. Unum Life responded on March 16, 2010 and informed King that it would not complete another administrative review. King filed the current action on October 25, 2010.

## STANDARD OF REVIEW

This Court may grant summary judgment on a claim if the record shows that there is no genuine dispute of any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party who moves for summary judgment has the burden of identifying the parts of the pleadings and discovery on file that, together with any affidavits, show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the movant carries this burden, then the burden shifts to the nonmovant to show that the Court should not grant summary judgment. *Id.* at 324–325. The nonmovant must set forth specific facts that show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmovant cannot rely on conclusory allegations, improbable inferences, and unsupported speculation. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993). The Court must review the facts and draw all inferences most favorable to the nonmovant. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

## DISCUSSION

### I. Claim for Past Benefits under 1132(a)(1)(B)

King's action for a denial of benefits arises under 29 USC § 1132(a)(1)(B). ERISA does not contain a statute of limitations for benefit claims. *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992). The Fifth Circuit adopts the statute of limitations most analogous to the cause of action. *Id.* A claim for past benefits is most analogous to a breach of contract claim, which has a statute of limitations of four (4) years in Texas. *Id.*; Tex. Civ. Prac. & Rem. Code Ann. § 16.004. *See also, Becknell v. Long Term Disability Plan for Johnson & Johnson et. al.*, 2010 WL 2756547 (W.D.Tex. 2010). The limitations period begins to run when a request for benefits

is denied. *Hogan,* 969 F.2d at 145. *See also, Hall v. Nat'l Gypsum Co.,* 105 F.3d 225, 230 (5th Cir. 1997); *Stahl v. Exxon Corp.,* 212 F.Supp.2d 657, 666 (S.D.Tex. 2002).

Unum Life argues that the very latest the limitations period could have started was on May 15, 2001, when it responded to King's demand letter affirming its decision to deny the benefits. Applying the date Unum Life offers, King's cause of action accrued on May 15, 2001. Thus, the statute of limitations expired on May 15, 2005.

King elected to participate in the reassessment process on March 15, 2005. Although he did not sign the Waiver until January of 2006, much of that delay can be attributed to Unum Life's administrative process. *See* Pl.'s App. at 2. Assuming that King's election to participate tolled the limitations period, the time period remaining on his cause of action (approximately sixty days, from March 15, 2005 through May 15, 2005) was tolled.

When Unum Life informed King of the reassessment decision on October 25, 2006, his sixty days began to run again. King had another sixty days, until on or about December 25, 2006, to file suit on the decision to deny any benefits after April 27, 2000. Because the instant case was not filed until 2010, that limitations period was long expired.

King attempts to revive the statute of limitations on his claim with the reassessment decision. The Waiver King signed expressly states that: "participation in the Claim Reassessment Process will not revive or reinitiate the statute of limitations with respect to the previous claim decision." There is no authority to suggest that a decision under the reassessment process is an entirely separate decision for the purposes of an ERISA action, or that it begins an entirely new limitations period under ERISA. *See, e.g., White v. Worthington Indus., Inc. Long Term Disability Income Plan, et al,* 266 F.R.D. 178 (S.D. Ohio 2010). The 2006 reassessment decision, to the extent King was still denied benefits, was an affirmation of the original decision

made in 2000. *See, e.g., Wessman v. Provident Life and Acc. Ins. Co.*, 606 F.Supp.2d 1098, 1106 (C.D.Cal. 2009) ("the review under the CSA is still a review of Provident's decision under the Plan . . .").

Because an action on the original decision is time-barred, King cannot recover under the terms of the Plan.

**II. The Section 1133 Claim**

King alleges that Unum Life failed to provide him "with the opportunity for a full and fair review of his [claim] and has failed to provide the necessary information required for adequate notice in violation of 29 U.S.C. Section 1133."

29 U.S.C. § 1133 states:

> In accordance with regulations of the Secretary, every employee benefit plan shall--
>
> **(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> **(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Failure to comply with procedural requirements generally does not give rise to a substantive damage remedy. *See, e.g., Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability*, 493 F.3d 533, 539 (5th Cir. 2007) (citation omitted).

Typically, the remedy for procedural violations is a remand to provide the claimant with a "full and fair review." *See, e.g., Lafleur v. La. Health Service and Indem. Co.*, 563 F.3d 148 (5th Cir. 2009) ("Remand to the plan administrator for full and fair review is usually the

appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA.").

It is not shown that ERISA-based procedural protections are provided to claimants during the optional reassessment process. *See, e.g., MacLennan v. Provident Life & Acc. Ins. Co.*, 676 F.Supp.2d 57, 65 (D.Conn. 2009) ("Simply put, the RSA does not change the terms of any ERISA plan – the RSA is an entirely separate contractual process that had no effect on [plaintiff's] rights, responsibilities, and remedies under ERISA.").

King has not shown that § 1133 applies to the reassessment. However, assuming *arguendo* that it does, King failed to timely file suit and his claim for benefits is barred by the statute of limitations. Therefore, his claim for procedural violations arising from the reassessment notice is moot.

### III. The Claim for Statutory Penalties

In his original complaint, King asks that Unum Life be required to pay statutory penalties of $100 per day "commencing on or near thirty (30) days after November 1, 2006 when Plaintiff['s] request for information and instructions were made to the Defendant."

29 U.S.C. 1132(c)(1) states:

> **(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form**
>
> (1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) **who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary** (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request **may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of**

7

**such failure or refusal**, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

(emphasis added).

The reassessment process was not a mandatory administrative appeal under ERISA; rather, it was an optional process for reevaluation of claims that did not affect a claimant's litigation rights arising from the original decision.

This scenario has been addressed by a district court in Minnesota. There, the court held that:

> [T]he RSA, by its terms, is a contractual agreement between Defendant, insurance regulators, and the United States Department of Labor. . . . The Court declines to expand the enforcement scheme of ERISA to encompass the RSA reassessment process and to declare Defendant the plan administrator subject to the requirements and obligations of ERISA.

*Gates v. UNUM Life Ins. Co.*, 2008 WL 2828871 at *3 (D.Minn. 2008).

King has presented no evidence that the reassessment process is itself subject to ERISA procedural provisions, and the text of the RSA suggests otherwise ("Other than those rights afforded under this Agreement, no additional rights are provided . . ." (Def.'s App. at 261)).

§ 1132(c) is not appropriate in this context.

## V. Conclusion

Plaintiff King shall take nothing, and summary judgment will be entered for Defendant Unum Life on all of Plaintiff's claims.

IT IS SO ORDERED.

Signed this 18th day of March, 2011.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE